## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

PHLISIDA GIBBS, on behalf of herself
and on behalf of all others similarly situated,

    Plaintiff,

v.                                            Case No.: 8:17-cv-02187-EAK-JSS

CENTERPLATE, INC., VOLUME
SERVICES, INC., SERVICE AMERICA
CORPORATION, and CENTERPLATE
HOSPITALITY VENTURE,

    Defendants.
_____/

## **REPORT AND RECOMMENDATION**

      This matter is before the Court on the parties' Joint Motion for Final Approval of Settlement (Dkt. 39) and Plaintiff's Unopposed Motion for Attorneys' Fees and Costs. (Dkt. 38.) On December 17, 2018, the Court held a hearing on the motions. For the reasons stated at the hearing and explained herein, the Court recommends granting the Joint Motion for Final Approval and Plaintiff's Unopposed Motion for Attorneys' Fees and Costs.

## **BACKGROUND**

      Plaintiff brought this class action in the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida, alleging Defendants violated the disclosure and authorization provisions of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 b(b)(2)(A)(i)-(ii). (Dkt. 2.) In particular, Plaintiff alleged that beginning on August 21, 2015, Defendants obtained consumer and background reports on Plaintiff, Defendants' employees, and prospective employees without first making the statutorily required stand-alone disclosures and included additional language prohibited under the FCRA in their purported disclosure. (*Id.*) On

September 21, 2017, Defendants removed the case to the Middle District of Florida pursuant to 28 U.S.C. §§ 1331 and 1441(a). (Dkt. 1.)

On March 20, 2018, the parties filed their Joint Motion to Stay Proceedings Pending Mediation. (Dkt. 13.) On April 3, 3018, the parties reached a mediated settlement of Plaintiff's claims. (Dkt. 18.) In light of the settlement, the parties filed their Joint Motion for Preliminary Approval of Settlement and Notices to Settlement Class. (Dkt. 20). In doing so, the parties agreed to the following class definition:

> [A]ll persons as to whom Defendants (including affiliates) procured a background check, including a consumer report, in conjunction with an application for employment, promotion, or job change between August 21, 2015 and continuing until the date of settlement approval ("Settlement Class") – a class of approximately 5,895 people.

(Dkt. 20 at 2.) On July 23, 2018, the Court granted the parties' Joint Motion for Preliminary Approval of Settlement and Notices to Settlement Class. (Dkt. 28.) On December 7, 2018, Plaintiff filed the Unopposed Motion for Attorneys' Fees and Costs (Dkt. 38), and on December 10, 2018, the parties filed their Joint Motion for Final Approval of Settlement. (Dkt. 39.) The Court conducted a Final Fairness Hearing on December 17, 2018, during which the Court heard oral argument from Plaintiff's and Defendants' counsel on why the Court should grant the Motions. (Dkt. 41.) No objections to the Settlement Agreement were filed or raised at the Final Fairness Hearing.

## DISCUSSION

### I. Class Certification

Federal Rule of Civil Procedure 23 sets forth the requirements for bringing suit as a class. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 622 (1997) ("Federal courts, in any case, lack authority to substitute for Rule 23's certification criteria a standard never adopted—that if a

settlement is 'fair,' then certification is proper."); Fed. R. Civ. P. 23(c) advisory committee's note to 2003 amendment ("The provision that a class certification 'may be conditional' is deleted. A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met."). "Although the parties have consented to certification of a settlement class in this case, the Court must independently determine whether this case meets the requirements for class certification under Federal Rule of Civil Procedure 23(a) and 23(b), even if the certification is only for settlement purposes." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 676 (S.D. Fla. 2006); *Holman v. Student Loan Xpress, Inc.*, No. 8:08-CV-305-T23MAP, 2009 WL 4015573, at *2 (M.D. Fla. Nov. 19, 2009).

Under Rule 23, the four prerequisites to a district court's certification of a class are "numerosity, commonality, typicality, and adequacy of representation" of the class, and these prerequisites "are designed to effectively limit class claims to those fairly encompassed by the named plaintiffs' individual claims." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003) (internal quotations and citations omitted); Fed. R. Civ. P. 23(a)(1)-(4). Numerosity is generally satisfied when there are more than forty putative class members. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Commonality is satisfied when there is "at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). Typicality is satisfied where there is "a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Adequacy of representation is satisfied when "plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation," and when "plaintiffs [do not] have interests antagonistic to those of the rest of the

3

class." *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985). "Failure to establish any one of these four factors and at least one of the alternative requirements of Rule 23(b) precludes class certification." *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615-18 (1997)).

Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to all class members predominate over any questions affecting only individual class members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) "requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Carter v. Forjas Taurus, S.A.*, 701 Fed. App'x 759, 765 (11th Cir. 2017) (per curiam). Importantly, when "confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Windsor*, 521 U.S. at 620.

Here, the Court recommends final certification of Plaintiff's putative class because the purported class meets all of the Rule 23(a) prerequisites and satisfies Rule 23(b)(3). Where, as here, parties reach a class action settlement agreement before the putative class is certified, a court must examine whether the putative class meets the prerequisites of Rule 23(a) and at least one of the types of classes under Rule 23(b). The Court already preliminarily approved a settlement class in this case as the following:

> [A]ll persons as to whom Defendants (including affiliates) procured a background check, including a consumer report, in conjunction with an application for employment, promotion, or job change between August 21, 2015 and continuing until the date of settlement approval ("Settlement Class") – a class of approximately 5,895 people.

4

(Dkt. 26 at 2, 6-8.)  The Court also preliminarily found that certification of the Settlement Class was proper for settlement purposes.  (Dkt. 28 at 8.)  Consistent with the Court's preliminary class certification, the Court recommends final certification of the Settlement Class.  First, the numerosity requirement is satisfied as the proposed class size consists of "approximately 5,895 Settlement Class Members."  (Dkt. 20 at 13.)  Next, commonality is satisfied because there is "at least one issue whose resolution will affect all or a significant number of the putative class members."  *See Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotations omitted).  Plaintiff alleges that she was the victim of a common practice by Defendants of obtaining consumer and background reports in violation of the FCRA.  (Dkt. 2.)  The parties contend that some of the common questions of fact and law include "whether including any material in a disclosure form beyond the mere fact that a prospective employer will obtain a consumer report violates the FCRA" and "whether Defendant(s) willfully violated the FCRA."  (Dkt. 20 at 13.)  Resolution of any one of these issues can be resolved as to the entire Settlement Class.

Further, typicality is shown because Plaintiff possesses "the same interest and suffer[s] the same injury as the [Settlement Class] members."  *See Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001).  The alleged harm to the Plaintiff is the same as the alleged harm suffered by the Settlement Class members—"they were the subject of a background check obtained through what Plaintiff contends is a disclosure form that fails to satisfy the FCRA's stand-alone disclosure requirement."  (Dkt. 20 at 13–14.)  "[T]here is no variation in legal theory" between Plaintiff's claims and the claims of the Settlement Class.  *See Kornberg*, 741 F.2d at 1337.

Finally, both components of the final requirement of Rule 23(a) are met.  First, Plaintiff, as class representative, does not have interests antagonistic to the class.  Rather, her interests

5

align with the interests of the Settlement Class because Plaintiff and the Settlement Class seek redress of the same alleged wrong. *See Fresco*, 2007 WL 2330895, at *2 (finding the first prong of the adequacy requirement satisfied because "[b]oth the Named Plaintiffs and the settlement class members share the common interest of protecting their . . . information," and "[e]ach settlement class member will benefit from the injunctive relief that will be provided by the proposed settlement"). Further, although Plaintiff will receive an incentive award (Dkt. 120 at 3), "the incentive award is not to compensate [Plaintiff] for damages but to reward [her] for [her] efforts on behalf of the Settlement Class." *Burrows*, 2013 WL 10167232, at *4. As to the second prong, Plaintiff's counsel understands the claims in this case and possesses class action experience. (*See* Dkt. 20-2.)

In addition, the requirements of Rule 23(b)(3) are met. Rule 23(b)(3) requires that the court find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* at 23(b)(3); *Amchem*, 521 U.S. at 623 (explaining that the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation"). In this case, given the nature of the alleged wrong and the value of each Settlement Class member's potential damages, there is no strong interest in each member bringing a separate action. Further, no evidence has been presented of other litigation brought by the Settlement Class members. The members of the Settlement Class suffered the same alleged injury and seek relief under the same legal theory; thus, "[a]s a practical matter, requiring multiple actions by each [Settlement Class member] would be financially burdensome and judicially inefficient." *Holman*, 2009 WL 4015573, at *3.

Accordingly, the Court recommends final certification of the Settlement Class for the purposes of settlement.

## II. The Proposed Settlement Agreement

### A. Notice to Class Members

Rule 23(e), governing the settlement of class claims, requires that the court "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id.* at 23(c)(2)(B). The notice must state, "clearly and concisely" and "in plain, easily understood language," the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

In this action, the parties submitted proposed notice material for the Court's review and approval. (Dkt. 20-1, Ex. B.) The Court approved the proposed form of notice after finding that the method of providing notice was reasonable. (Dkts. 26 at 9-10; 28 at 2-3.) Thereafter, Defendants provided the Settlement Administrator with a list of 5,893 class members, which contained the first and last name and the last four digits of their social security number. (Dkt. 39-2 ¶¶ 4-5.) The list contained the last known mailing addresses for 5,488 of those members (*Id.* ¶ 5.) The Administrator used commercially reasonable means to ensure delivery was effective, including using the National Change of Address Database. (*Id.* ¶ 6.) On November 5, 2018, the court-approved Class Notice and Claim Form was mailed by First Class U.S. Mail to

5,117 Class Members. (*Id.* ¶ 7.)  The Class Notices informed Settlement Class members of: (1) the material terms of the Settlement Agreement; (2) their right to object and how to do so; (3) their right to exclude themselves by opting out and how to do so; (4) that they will be bound by the Settlement Agreement if they do not opt out; (5) the date, time and location of the final fairness hearing scheduled by the Court; and (6) that the Court retains the right to reschedule the final fairness hearing without further notice.  (*Id.*)  The Class Notices also directed recipients to the settlement website, www.centerplatefcraclassaction.com, which contained additional information about the Settlement. (*Id.* ¶ 8.)  The Settlement Administrator also maintained a toll-free telephone number for questions related to the Settlement. (*Id.* ¶ 9.)  The Court finds that the notice to the class was reasonable and the best notice practicable under the circumstances, consistent with Rule 23(e) and Rule 23(c)(2)(B).

### B. Settlement Agreement

The parties contend that the Settlement Agreement "is fair, reasonable, and adequate." (Dkt. 20 at 9.)  In evaluating whether a settlement is fair, reasonable, and adequate, a court considers: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)

Here, the Settlement Agreement is not the product of fraud or collusion but instead is the product of the parties' arm's-length negotiations aided by formal mediation. (Dkt. 20 at 5.)  The parties began mediation on April 3, 2018, during which they reached the settlement.  (Dkt. 18.)  Further, evaluating the likelihood of success at trial supports approval of the Settlement

Agreement because Defendants assert numerous defenses to Plaintiff's claims and deny liability for any willful violations of the FCRA.  (Dkt. 20 at 6.)  Therefore, "because success at trial is not certain for Plaintiff, this factor weighs in favor of accepting the settlement."  *Burrows v. Purchasing Power, LLC*, No. 1: 12-CV-22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013).

As to the range of possible recovery, the parties contend that Plaintiff could receive nothing if Defendants' defenses prevail.  (Dkt. 20 at 9.)  In her Amended Complaint, Plaintiff sought to recover statutory damages of not less than $100 and not more than $1,000 for each alleged violation under the FCRA and punitive damages.  (Dkt. 2.)  The Settlement Agreement provides that Defendants agree to a gross settlement fund of $598,500, to be distributed pro rata to Settlement Class members.  (Dkt. 20 at 2.)  As of December 7, 2018, 649 claims had been submitted to the Settlement Administrator.  (Dkt. 39 at 4.)  Assuming that 1,000 claims are submitted before the January 4, 2019 deadline and that the Court grants Class Counsel's Motion for Attorneys' Fees and Costs, each claimant would receive approximately $376.  (Dkt. 39 at 4.)  This represents an excellent recovery for class members.

With regard to the fourth and sixth factors of consideration, trying this case would be lengthy and expensive and could result in appeals.  This litigation has been pending since August 21, 2017, and the parties have undergone discovery.  (Dkts. 2; 20 at 2.)  The parties are well positioned to assess the strengths and weaknesses of this case and the benefits of the proposed Settlement Agreement.  Thus, considerations of the complexity, expense, and duration of the litigation in conjunction with the stage at which settlement was achieved support approval of the Settlement Agreement.  *See Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 2330895, *6 (S.D. Fla. 2007) ("Were this matter to continue, numerous, complex issues of law

would have to be resolved at the cost of considerable time and expense to the parties and the Court."); *Estate of Dolby ex rel. Koenig v. Butler & Hosch, P.A.*, No. 8:03-CV-2246-T-23TGW, 2006 WL 2474062, at *6 (M.D. Fla. Aug. 25, 2006) ("The proposed settlement is occurring early enough in the litigation that significant litigation fees and costs will be avoided, but not so early that counsel lacked sufficient information to make an informed decision."). Finally, the Court has considered the lack of any opposition or objection to the Settlement Agreement. Thus, the Court finds the Settlement Agreement to be a fair, adequate, and reasonable resolution of the class members' claims and therefore recommends approving the Settlement Agreement.

### III.   Attorneys' Fees and Costs, and Class Representative Award

#### A. Attorneys' Fees and Costs

In Plaintiff's Fees and Costs Motion, Plaintiff's counsel requests attorneys' fees in the amount of $176,850.00, which is equal to 30% percent of the Settlement Fund. (Dkt. 38.) Defendants agreed not to dispute or oppose a fee award of up to 30% of the common fund, reimbursement of costs up to $15,000 from the common fund, and the cost of notice and administration from the common fund not to exceed $30,000. (Dt. 38 at 4-5.)

To determine attorneys' fees "in a case involving a class action settlement that created a reversionary common fund, [the Eleventh Circuit] held that 'attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.'" *Poertner v. Gillette Co.*, 618 F. App'x 624, 628 (11th Cir. 2015) (quoting *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 770, 774-75 (11th Cir. 1991)). The "majority of common fund fee awards fall between 20% to 30% of the fund." *Camden I*, 946 F.2d at 774. This "benchmark" "may be adjusted in accordance with the individual circumstances of each

10

case." *Id.* at 775. Those circumstances include the twelve factors set out in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974), namely:

> (1) the time and labor required;
>
> (2) the novelty and difficulty of the questions involved;
>
> (3) the skill requisite to perform the legal service properly;
>
> (4) the preclusion of other employment by the attorney due to acceptance of the case;
>
> (5) the customary fee;
>
> (6) whether the fee is fixed or contingent;
>
> (7) time limitations imposed by the client or the circumstances;
>
> (8) the amount involved and the results obtained;
>
> (9) the experience, reputation, and ability of the attorneys;
>
> (10) the "undesirability" of the case;
>
> (11) the nature and the length of the professional relationship with the client;
>
> (12) awards in similar cases.

*Id.* at 772 n. 3 (citing *Johnson*, 488 F.2d at 717-79). "Other pertinent factors [include] the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, . . . and the economics involved in prosecuting a class action." *Id.* at 775. "In most instances, there will also be additional factors unique to a particular case, which will be relevant to the district court's determination. Having reviewed the efforts expended by Class Counsel, the Court finds that an

11

award of 30% of the Settlement Fund for attorneys' fees and costs is reasonable under the circumstances of this case, as explained below.[1]

### 1. Time and Time and Labor Required

"Although the hours claimed or spent on a case should not be the sole basis for determining a fee, . . . they are a necessary ingredient to be considered." *Johnson*, 488 F.2d at 717. Here, Class Counsel attests to having spent approximately 140 hours working on this case. (Dkt. 38-1 ¶ 11.) This is a reasonable amount of time spent on a complex case that has been pending for slightly more than one year. However, Class Counsel has not provided detailed declarations or billing records. As courts have noted in similar cases, "[t]he vague assertions in Class Counsel's declarations and the lack of detail in their billing records make it difficult to determine the reasonableness of the hours expended in this litigation." *Edwards v. Horizon Staffing, Inc.*, No. 1:13-CV-3002-WSD, 2015 WL 13283397, at *8 (N.D. Ga. Jan. 2, 2015). Thus, the Court finds that the time and labor devoted to this case, although reasonable, does not warrant an upward adjustment from a benchmark of between 20% to 30% of the Settlement Fund.

### 2. Novel and Difficult Issues

This Court must next consider whether the questions in the case were novel or difficult. "Cases of first impression generally require more time and effort on the attorney's part." *Johnson*, 488 F.2d at 717. This action, which involved technical violations of the FCRA, was not a case of first impression. However, Plaintiff would have faced litigation regarding whether she has standing under Article III. *See Spokeo, Inc. v. Robins*, --- U.S. ---, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016) ("Article III standing requires a concrete injury even in the context of a

---

[1] Plaintiff does not argue, and the Court does not find, that the following factors apply in this action: the nature and length of the professional relationship or time limitations imposed.

statutory violation. For that reason, Robins could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.")  In addition, Plaintiff would have had to prove that Defendants willfully violated the FCRA.  *See, e.g.*, *Hillson v. Kelly Servs. Inc.*, No. 2:15-CV-10803, 2017 WL 279814, at *8 (E.D. Mich. Jan. 23, 2017) ("[T]o recover statutory damages, Plaintiffs would have to show that Kelly willfully violated the FCRA.").  The Court therefore concludes that this factor weighs in favor of the requested fee award of 30% of the Settlement Fund.

### 3. The Skill of Class Counsel

The next relevant factor is whether the case required the skill of highly talented lawyers. The Court finds that the present litigation required the skill of highly talented lawyers.  Class Counsel has been named as class counsel in at least seven other FCRA class actions.  (Dkt. 38-1.)  Further, federal courts have relatedly observed that "the quality of representation is best measured by results, and . . . such results may be calculated by comparing the extent of possible recovery with the amount of actual verdict or settlement." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 55 (2d Cir. 2000) (internal quotations and citation omitted).  The result achieved in this case—a per class member gross recovery of $100.00—supports the conclusion that Class Counsel is skilled and well qualified.

### 4. Preclusion from Other Employment

The next *Johnson* factor also favors granting Class Counsel's request for attorneys' fees. The hours required to prosecute this action limited the amount of time and resources that Class Counsel was available to devote to other matters over the period of this litigation.  (Dkt. 38 at 12.)  Thus, this factor also militates in favor of finding the requested fee reasonable.

### 5. Customary Fee

The Court must also assess whether the requested fee is customary for a case such as this, namely, a complex class action pursued on a pure contingency fee basis. The requested fee of 30% is less that the 33% fee award recently affirmed by the Eleventh Circuit in *Muransky v. Godiva Chocalatier, Inc.*, 905 F.3d 1200, 1216 (11th Cir. 2018). Further, the requested fee is consistent with fee awards that have been granted in other FCRA class actions within the Eleventh Circuit. *See Edwards v. Horizon Staffing, Inc.*, No. 1:13-CV-3002-WSD, 2015 WL 13283397, at *11 (N.D. Ga. Jan. 2, 2015) (awarding fees and costs in the amount of 30% of the settlement fund in an FCRA class action). In addition, district courts in other circuits have concluded that similar fee awards are reasonable in FCRA class actions. *See Flores v. Express Servs., Inc.*, No. CV 14-3298, 2017 WL 1177098, at *3 (E.D. Pa. Mar. 30, 2017) ("Upon consideration of percentages granted in similar class action settlements, 32.96% of the total common fund is within the range of awards that support approval."); *Smith v. Res-Care, Inc.*, No. CV 3:13-5211, 2015 WL 6479658, at *7 (S.D.W. Va. Oct. 27, 2015) ("The Court finds 33% is a reasonable amount of the common fund under the percentage of common fund method.") Accordingly, Class Counsel's request for a fee award of 30% of the Settlement Fund is consistent with what courts have awarded in other FCRA class actions.

### 6. Type of Fee Arrangement

The sixth *Johnson* factor concerns the type of fee arrangement (hourly or contingent) entered into by the attorney. 488 F.2d at 718. "A contingency fee arrangement often justifies an increase in the award of attorneys' fees." *Behrens v. Wometco Enters.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988). As recognized in *Behrens*, without a contingent fee, "very few lawyers could

14

take on the representation of a class client given the investment of substantial time, effort and money, especially in light of the risks of recovering nothing." *Id.* at 548.

Class Counsel assumed substantial risk in pursuing this case by agreeing to prosecute claims which, as noted above, presented significant legal issues and which were subject to several affirmative defenses that could have reduced the value of the case to zero. Class Counsel's risk was also amplified by the fact that it agreed to prosecute those claims on a pure contingency basis, meaning it would not receive any compensation for its work or reimbursement for out-of-pocket expenses if the class did not ultimately receive a recovery. The firm dedicated significant time to the case and advanced costs totaling $5,494.34, despite the possibility that it might receive nothing in return. (Dkt. 38 at 14.) Accordingly, the Court concludes that this factor weighs in favor of the requested fee award.

### 7. Results Obtained

The next factor which must be considered is the amount involved and the results obtained. In *Camden*, the Eleventh Circuit explained that "a common fund is itself the measure of success"; thus, "[the] monetary results achieved [in a particular case] predominate over all other criteria." 926 F.2d at 774 (citation omitted). Stated another way, the amount involved and results obtained is the "most important factor" in determining an award of attorneys' fees. *Allapattah Servs.*, 454 F. Supp. 2d at 1204-05.

Class Counsel recovered $589,500 for the benefit of all class members. The gross recovery for each class member is $100.00. Class members timely filing claims will receive significantly more than that amount. (Dkt. 39 at 4.) The Court finds that this is an excellent recovery for the class members, particularly because Plaintiff would have been required to prove Defendants' willfulness. *See, e.g.*, *Schoebel v. Am. Integrity Ins. Co.*, 2015 WL 3407895, at *7

15

(M.D. Fla. May 27, 2015) (dismissing FCRA stand-alone disclosure case seeking statutory damages because alleged violation was not willful).

Further, the per-class member gross recovery of $100.00 under the Settlement Agreement exceeds per-class member amounts that have been obtained in similar cases under the FCRA. For example, in *Hillson v. Kelly Servs. Inc.*, No. 2:15-CV-10803, 2017 WL 3446596, at *3 (E.D. Mich. Aug. 11, 2017), the district court characterized a gross recovery of $30 per class member in an FCRA case as a "good" result. In doing so, the district court surveyed results in other cases, stating that a recovery of $30 per class member

> appears to be in line with the average per-class-member gross recovery in other settlements of stand-alone disclosure claims. *See Moore v. Aerotek, Inc.*, No. 2:15-CV-2701, 2017 WL 2838148, at *4 (S.D. Ohio June 30, 2017) (per-capita gross recovery of $25 in case involving a stand-alone disclosure claim and a claim that employer did not provide a copy of consumer report), *report and recommendation adopted*, 2017 WL 3142403 (S.D. Ohio July 25, 2017); *Lagos v. Leland Stanford Junior Univ.*, No. 15-CV-04524-KAW, 2017 WL 1113302, at *2 n.1 (N.D. Cal. Mar. 24, 2017) (per-capita gross recovery of $26); *Lengel v. HomeAdvisor, Inc.*, No. CV 15-2198, 2017 WL 364582, at *9 (D. Kan. Jan. 25, 2017) (citing FCRA disclosure cases with per-capita gross recoveries of $33, $40, and $44).

*Id.* at *3. Thus, after conducting a review of similar FCRA class actions, the Court concludes that the per-class member gross recovery of $100.00 obtained in this case is an excellent result and weighs in favor of the requested fee award.

### 8. Experience, Reputation, and Ability of the Attorneys

The ninth *Johnson* factor requires the Court to consider Class Counsel's experience, reputation, and ability, along with that of Defendants' counsel. This factor also favors granting the requested award of fees, as both Class Counsel and opposing counsel are experienced and respected lawyers with proven records of handling complex litigation, including class actions.

**9. Undesirability of the Case**

As explained above, this class action required representation by experienced counsel who agreed to take the case on a contingent-fee basis despite facing significant legal obstacles. The prospect of engaging in and financing protracted complex litigation without obtaining a favorable recovery is not highly desirable. The Court finds that this factor weighs in favor of the requested fee award.

**10. Awards in Similar Cases**

As noted in section (5) above, the requested fee award is consistent with fee awards that have been granted in other FCRA class actions within the Eleventh Circuit.

**C. Costs**

Class Counsel also request reimbursement of costs totaling $5,494.34. "Upon submission of adequate documentation, plaintiffs' attorneys are entitled to reimbursement of those reasonable and necessary out-of-pocket expenses incurred in the course of activities that benefitted the class." *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1296, 1314 (E.D. N.Y. 1985), modified on other grounds, 818 F.2d 226 (2d Cir. 1987), *quoted by Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999). The district court has a "responsibility to scrutinize the costs for which reimbursement is requested in order to ensure that class counsel is not obtaining a secret or unintended profit." *Int'l Precious Metals Corp.*, 190 F.3d at 1298. Class Counsel submitted a summary of their expenses in support of this Motion totaling $5,494.34, the majority of which were filing fees and mediation expenses. (Dkt. 38-1 at 7-8.) The cost total is included in the attached declaration of Class Counsel, along with the appropriate invoices breaking down the following incurred costs, all of which are

recoverable. (Dkt. 38-1.) The costs sought are recoverable as reasonable and necessary out-of-pocket expenses incurred in the course of activities that benefitted the class.

### D. Cost of Notice and Administration

Class Counsel also seeks payment for the cost of Notice and Administration. As addressed during the Final Fairness Hearing, Class Counsel solicited multiple bids, of which Simpluris offered the best value for the class. In accordance with the Settlement Agreement, Class Counsel is entitled to payment from the common fund to Simpluris for providing notice and settlement administration service to the class.

### E. Service Award

"[I]ncentive awards are appropriate to recognize the efforts of the representative plaintiffs to obtain recovery for the class." *In re Domestic Air Transp. Litig.*, 148 F.R.D. 297, 358 (N.D. Ga. 1993). Incentive awards "are justified when the class representatives expend considerable time and effort on the a result of their participation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001); *see also In re Domestic Air*, 148 F.R.D. at 358 ("Modest compensation may sometimes be merited for extra time spent by the class representatives in meeting with class members, gathering discovery materials on behalf of the class, and similar efforts.") (quoting Manual for Complex Litigation § 30.41 n. 86 (2d ed. 1985)).

Plaintiff seeks an incentive award of $5,000.00. At the Final Fairness Hearing, Class Counsel stated that Phlisida Gibbs participated in reviewing documents, participated in discovery, and remained engaged throughout the course of the litigation. The Court finds that an incentive award of $5,000.00 to Ms. Gibbs as the Representative Plaintiff is reasonable, consistent with the incentive awards approved in other class actions in this district, and adequately recognizes her efforts to obtain recovery for the Settlement Class. *See Campos v.*

*ChoicePoint Servs. Inc.*, No. 1:03-cv-3577-WSD, 2007 WL 2001797, at *4 (N.D. Ga. July 5, 2007) (in FCRA class action, incentive award of $5,000 to class representatives was reasonable); *Hillis v. Equifax Consumer Servs., Inc.*, Nos. 1:04-cv-3400-TCB, 1:07-cv-314-TCB, 2007 WL 1953464, at *17 (incentive award of $7,500 each to class representatives who produced documents and information, were deposed, and throughout 3-year litigation regularly met with class counsel to review and discuss status of litigation); *In re Domestic Air*, 148 F.R.D. at 357-58 (incentive award of $2,500 for each class representative who produced documents and $5,000 for each class representative who was also deposed were appropriate to recognize efforts of representative plaintiffs to obtain recovery for class).

Accordingly, it is **RECOMMENDED**:

1. That the parties' Joint Motion for Final Approval of Settlement (Dkt. 39) be **GRANTED** and the Settlement Agreement (Dkt. 39-1) be **APPROVED**.

2. That Plaintiff's Unopposed Motion for Attorneys' Fees and Costs (Dkt. 38.) be **GRANTED**.

**IT IS SO REPORTED** in Tampa, Florida, on December 28, 2018.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

Copies furnished to:
The Honorable Elizabeth A. Kovachevich
Counsel/Parties of Record